Robert JOHNSON and Forest Barker, d.b.a. Johnson & Barker Coal Company, et al., Appellants,

v.

William C. STONE, Appellee.

Court of Appeals of Kentucky.

May 25, 1962.

Harry C. Campbell, Pikeville, for appellants.

M. B. Fields, Hazard, for appellee.

PALMORE, Judge.

The appellee, William Stone, was employed by the appellants Johnson and Barker as a loader operator in a coal mine. On October 8, 1958, he became ill while moving rock in the mine with his loading machine. He continued to report for work during the next several days but still felt bad and found it necessary to stop and rest frequently. His physical distress finally became such that he went to the hospital at 4:00 A.M. on October 16, 1958. Ensuing examinations disclosed arteriosclerosis and a myocardial infarction. He was hospitalized for 25 days and is now disabled except for sedentary work. At the time he fell sick he was 58 years old. The arteriosclerotic condition was diagnosed as having developed over a number of years, but he had not experienced any previous symptoms.

Following a hearing on Stone's application for workmen's compensation the full board adopted and confirmed findings by the referee and dismissed the claim on the ground that there was no probative evidence of (1) trauma, (2) overexertion or unusual strain, or (3) causal connection between the work and the heart attack. On appeal the Knott Circuit Court adjudged that the decision of the board was not in conformity with the definition of compensable injury by accident as set forth in KRS 342.005 and remanded the cause with directions to enter an award. The present appeal followed.

█ At the time the board adjudicated the claim this court had not decided the cases of Terry v. Associated Stone Co., Ky. 1960, 334 S.W.2d 926, and Grimes v. Goodlett and Adams, Ky.1961, 345 S.W.2d 47. In the Terry case it was held that a competent medical opinion to the effect that the strain of a specifically identified effort was a contributing cause to a disabling heart attack will support a finding of accidental injury. It is not necessary that the exertion have been unusual or extraordinary. In the Grimes case it was held that such an injury is "traumatic" within the meaning

of KRS 342.005(1). Both of these cases recognize that if the work-connected exertion precipitates a disability in which a pre-existing arteriosclerotic condition is the predominating causative factor the award should reflect the proportionate contribution of the injury to the disability.

At the time he became ill Stone was having difficulty in breathing because of the presence of smoke blown upward through the mine spaces from a burning cable below. With respect to the causal relation between the immediate circumstances and the heart attack his physician, Dr. J. C. Coldiron, testified as follows: "There is no doubt in my mind that this man's condition is due to a coronary incident happening back in October, 1958. * * * Seems like the resumè of circumstances happening around the 8th of October was the trigger, the burning of the mine cable and the stress he was under triggered off this attack or coronary occlusion."

Another physician, Dr. Franklin Moosnick, a Lexington internist, added that breathing air contaminated by smoke fumes would be a factor conducive to the type of attack suffered by Stone.

The defense testimony was given by three doctors, two of whom are well-known heart specialists. Dr. John T. Gibson, a general practitioner who attended Stone following his admission to the hospital, ascribed the attack to the pre-existing arteriosclerotic condition and thought it would have occurred eventually anyway, but would not say whether it was brought on or could have resulted in part from exertion. Both of the specialists, Drs. Morris Weiss and Herbert L. Clay, conceded that a coronary occlusion can be precipitated by "unusual" strain or excitement.

Assuming that the work Stone was doing at the time of the onset was his usual routine work and that the presence of the smoke was a condition to which he was accustomed, Dr. Clay said he would not consider the work as a precipitating factor "any

"more than" work on a milk route or in an office would be so considered. This observation, however, begs the question to be answered in this type of case, which is, did the work or the conditions under which it was performed contribute in any way to the attack?

 When the responsive effort demanded of an employee's physical mechanism in order to do his work contributes to a seizure that would not have occurred at that time except for that effort, however easy and routine it may be, the resulting disability is in some degree attributable to the work and is compensable. If, for example, a previously disabled knee is dislocated in the routine act of stooping to retrieve a pencil from the office floor, it is no defense to say that the same thing could as easily have happened in church or on the golf course, or at leisure. We are aware, of course, that there are no tests by which the myriad factors that have interacted to determine the precise moment of a coronary occlusion can be ascertained. It is simply a matter of professional opinion, based not on certainty but on reasonable probability, and in this respect is not startlingly different from many another educated guess the physician is accustomed to make in the everyday practice of his profession. What we want to know is whether it is likely that the work had anything to do with bringing on the attack at the particular time in question.

Just as in the Grimes case, the medical testimony given in defense was essentially noncommittal on the question of what, if any, was the relation between Stone's work on October 8, 1958, and the heart attack. It did not really counter or tend to refute the positive opinion of Dr. Coldiron that the attack was "triggered" by the stress of Stone's physical activity and his breathing smoke from the burning cable. Under these circumstances a liberal construction of the law required a finding of fact in accordance with the uncontradicted opinions of the claimant's medical witnesses. Grimes v. Goodlett and Adams, Ky.1961, 345 S.W.2d 47. Therefore, the judgment of the circuit court reversing the order of the board and remanding the case was proper. Upon remand the board may hear whatever additional proof is necessary in order to base its award on the proportionate contribution of the injury to the disability.

Judgment affirmed.

STEWART, C. J., dissenting.